UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CR205SNLJ(MLM) |
| | ) | |
| STEPHEN HUTTON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on defendant Stephen Hutton's Motion to Suppress Evidence and Statements. [Doc. 15] The government responded. [Doc. 17] On 9/9/08 an Evidentiary Hearing was held at which the government presented the testimony of Josh Davis, a Detective with the Berkeley Police Department currently detached to the North County MEG Unit and Michael Bradshaw, a Police Officer with the Berkeley Police Department. Defendant did not present witnesses. Based on the testimony and evidence adduced and having had an opportunity to evaluate the credibility and observe the demeanor of the witnesses, the undersigned makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

In early September, 2007 Det. Josh Davis was contacted by a confidential informant ("CI"). Previously, he had received information from this CI on at least 5-10 occasions. The information led to follow up and investigation corroborated the information every time. Det. Davis therefore had reason to believe that the CI was reliable. The CI told Det. Davis that defendant, Stephen Hutton, was selling crack cocaine in the Berkeley/Kinlock area from his vehicle, a mid-90's Ford Crown Victoria, silver gray in color with a black top. The CI called Det. Davis 3-4 times with this information, sometimes giving the exact location

of defendant's vehicle. Det. Davis did not respond either because he was busy or otherwise unavailable. Although he was unable to respond, Det. Davis took investigatory steps such as obtaining defendant's driver's license photo and obtaining his criminal history from which he learned that defendant had a felony conviction for drugs.

On 10/1/08 the CI called Det. Davis on his cell phone and said he/she had just left defendant in the 6100 block of Hancock Street where he/she saw defendant in possession of crack cocaine and marijuana. He/she said defendant was with his girlfriend in the previously described vehicle.

Det. Davis responded immediately because he was just around the corner from defendant's location when he received the information. He saw defendant's vehicle parked in the middle of Hancock Street obstructing traffic. Det. Davis parked in the nearby church parking lot and conducted surveillance. He observed two occupants in the vehicle. He got a good look at the driver whom he recognized as defendant Stephen Hutton from his driver's license photo. Defendant appeared to be yelling out the passenger window to someone on the sidewalk. Defendant's vehicle then proceeded south on Hancock Street. Det. Davis called PO Bradshaw and asked him to stop the vehicle.[1] He relayed the CI's information, the fact that the vehicle was illegally obstructing traffic and described the vehicle to PO Bradshaw.

PO Bradshaw stopped the vehicle in the 6000 block of Hancock. Det. Davis followed behind PO Bradshaw's car. PO Bradshaw exited his car and approached defendant's vehicle. He observed two persons inside and saw the driver lean to the right towards the passenger with his right arm extended. PO Bradshaw then focused on the passenger and

---

[1] Det. Davis testified he was driving an unmarked car. It is Department policy to call for a marked car to stop vehicles. PO Bradshaw was in a marked car and activated his emergency lights and siren to stop the vehicle.

approached that side of the vehicle. Det. Davis took a cover position behind defendant's vehicle. PO Bradshaw asked for the passenger's driver's license identification. She did not respond. The passenger was a heavy set African American female wearing a waitress-type uniform with an apron. Her hands were in her lap covering the top part of the apron as if concealing something. He asked the passenger to step out of the vehicle and she complied. When she moved her hands, PO Bradshaw observed two clear plastic baggies, one containing off-white chunks consistent with crack cocaine and the other containing a green leafy material consistent with marijuana. He asked her to put her hands on top of the vehicle and took possession of the drugs. He gave the baggies to Det. Davis. The passenger appeared upset. The driver, while still seated in the vehicle, immediately said in effect "Those aren't hers. They belong to me" or "That's not hers. I told her to hold it. She's not involved." Neither Officer had spoken to or addressed defendant in any way prior to the statement.

Det. Davis asked the driver, defendant Stephen Hutton, to step out of the vehicle. He handcuffed defendant and placed him under arrest. He advised him of his Miranda Rights[2] at the rear of defendant's vehicle and they walked back to Det. Davis' car. They had an approximate 3-5 minute conversation in the car. Det. Davis told defendant he could tell by the amount of crack in the baggie that it was over 5 grams and that therefore defendant was in serious trouble if the case was taken up by federal authorities. Det. Davis asked defendant to "give up his source." Defendant replied that "Pig" was his source. Det. Davis was aware that "Pig" is the name used by Avery West.[3] Det. Davis told defendant he would

---

[2] At the Evidentiary Hearing, Det. Davis did not recall if he used his Department-issued Miranda Rights card or did it from memory.

[3] Avery West was recently convicted of drug trafficking in this court.

need to continue to cooperate and took off the handcuffs. He let defendant and the passenger leave.

At no time did any of the officers draw their guns or use or threaten force. They did not use abusive or coercive language. The encounter was calm and cordial. It occurred during daylight hours, at approximately 4:30 P.M. on a public street in a residential area. The only officers present were Det. Davis, PO Bradshaw and PO Bradshaw's partner, PO Smith who had no active role in the encounter.

## CONCLUSIONS OF LAW

**Reasonable Suspicion for the Stop**

Police officers may briefly detain an individual for investigative purposes when they have reasonable suspicion that criminal activity is taking place. See Terry v. Ohio, 392 U.S. 1, 9-10 (1968); United States v. Thompkins, 998 F.2d 629, 633 (8th Cir. 1993); United States v. Horne, 4 F.3d 579, 588 (8th Cir. 1993), cert.denied, 510 U.S. 1138 (1994).

An officer may rely on information provided by other officers and all of the information known to the team of officers involved in the investigation to provide justification for a stop. United States v. Gonzales, 220 F.3d 922, 925-26 (8th Cir. 2000)(state trooper who received description of vehicle from investigator had probable cause to arrest driver of vehicle); see also United States v. Gillette, 245 F.3d 1032, 1034 (8th Cir.)(when officers worked together on an investigation, "collective knowledge" theory may be used to impute the knowledge of one officer to another); cert. denied, 122 S.Ct. 415 (2001); United States v. Robinson, 119 F.3d 663, 666 (8th Cir. 1997).

"Police must have 'particularized and objective basis' for suspecting criminal activity at the time the stop is made." United States v. Spotts, 275 F.3d 714, 718 (8th Cir. 2002) quoting United States v. Thomas, 249 F.3d 725, 729 (8th Cir. 2001). This standard is less demanding than the standard for probable cause that applies to arrests both with respect

to the amount of supporting information that is required to establish reasonable suspicion and with respect to the degree of reliability that the information must exhibit. <u>Alabama v. White</u>, 496 U.S. 325, 330 (1990). Information from an informant with other corroboration can support a reasonable suspicion determination. <u>Spotts</u>, 275 F.3d at 718; <u>United States v. Robinson</u>, 119 F.3d 663, 666 (8th Cir. 1997). A lesser showing will be sufficient if the informant is a known source. <u>Adams v. Williams</u>, 407 U.S. 143, 148 (1972).

In the present case Det. Davis had received information from the CI on 5-10 previous occasions. All the information was corroborated. At least 3-4 times the CI gave information about defendant selling crack cocaine from his vehicle. Although unable to respond, Det. Davis obtained defendant's driver's license photo and learned he had a felony conviction for drugs. On the date in question, 10/1/07, the CI gave defendant's name, location and a description of defendant's vehicle, said he had just left defendant and observed him in possession of crack and marijuana. When Det. Davis responded to the location he observed the previously described vehicle driven by defendant whom he recognized from his driver's license photo. Certainly at this time Det. Davis had reasonable suspicion that criminal activity (drug trafficking) was occurring and therefore the stop of defendant to confirm or dispel the suspicion was lawful.

**Probable Cause for Defendant's Arrest**.

Law enforcement officers may arrest a person without a warrant if they have probable cause to believe that the person has committed or was committing a crime. <u>Gerstein v. Pugh</u>, 420 U.S. 103 (1975); <u>United States v. Watson</u>, 423 U.S. 411 (1976). Probable cause for arrest exists if at the time of the arrest the facts and circumstances within the knowledge of the officers and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the person had committed or was committing an offense. <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964). <u>See also</u>

R.S.Mo § 544.216 (a municipal law enforcement officer may arrest on view without a warrant any person about whom he has reasonable grounds to believe has violated any law of this state).

The proper standard for determining whether probable cause exists is whether the arresting officer reasonably believes an individual has committed or is committing a crime. United States v. Durile Lee Brown, 49 F.3d 1346 (8th Cir. 1995). More specifically

> [i]n determining whether probable cause exists to make a warrantless arrest a court will consider whether the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense. Probable cause is to be assessed in terms of the circumstances confronting a reasonably cautious police officer at the time of the arrest, and the arresting officer is entitled to consider the circumstances, including arguably innocent conduct, in light of his training and experience. "[T]he probability, and not the *prima facie* showing, of criminal activity is the standard of probable cause."

Hannah v. City of Overland, MO, 795 F.2d 1385, 1389 (8th Cir. 1986) (quoting United States v. Wallraff, 705 F.2d 980, 990 (8th Cir. 1983)). Here, while PO Bradshaw was approaching defendant's vehicle he saw defendant reach towards the passenger. When the passenger exited the vehicle, PO Bradshaw saw baggies of drugs. Defendant's spontaneous statement that the drugs were his together with PO Bradshaw's observation provided probable cause for defendant's arrest.

**Defendant's Statements**

**1.      Pre-Arrest Statement**

Miranda warnings need only be given when a suspect is both in custody and subjected to interrogation. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Defendant's first statement was spontaneous and designed to exculpate his passenger. He was not in custody, had not been arrested and neither of the officers had even spoken to him. In fact, "the Supreme court in Miranda expressly stated that '[v]olunteered statements of any kind

are not barred by the Fifth Amendment and their admission is not affected by our holding today.'" United States v. Butzin, 886 F.2d 1016, 1018 (8th Cir. 1989) quoting Miranda v. Arizona, 384 U.S. 436, 478 (1966). Defendant's blurted-out statement that the drugs were his should not be suppressed.

2.     Post-Arrest Statement

After defendant admitted the drugs were his, he was arrested and fully advised of his Miranda Rights. A defendant may knowingly and intelligently waive his rights and agree to answer questions. Miranda v. Arizona, 384 U.S. 436, 479 (1966). When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing and intelligent waiver of the Miranda rights by the defendant. Colorado v. Connelly, 479 U.S. 157 (1986). "The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry" Dickerson v. United States, 530 U.S. 428, 444 (2000). The court must look to the totality of the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice, rather than intimidation, coercion, or deception; and whether the waiver was made with an awareness of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine, 475 U.S. 412 (1986).

The statement must be voluntary and not the product of any police conduct by which the defendant's will is overborne. Haynes v. Washington, 373 U.S. 503 (1963); Colorado v. Connelly, 479 U.S. at 170. However, as the Supreme Court stated in Berkemer v. McCarthy, 468 U.S. 420 (1984), "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of Miranda are rare." Id. at 433 n. 20; Dickerson, 530 U.S. at 444. Although there was no testimony that defendant indicated he

understood his rights and wished to waive them and speak to Det. Davis, it is clear from the facts as set out above that defendant understood and was trying to cooperate by speaking to Det. Davis. Although Det. Davis explained that he was in serious trouble and needed to cooperate, there is no evidence that defendant's will was overborne or that his statement was "compelled." He sat in Det. Davis' car only 3-5 minutes, revealed his source of supply for the drugs and was immediately released. This is clearly not one of the "rare" cases described in Berkemer. Defendant's post-arrest statements should not be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Evidence and Statements be **DENIED**. [Doc. 15]

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this   19th   day of September, 2008.